UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY THREATT,

      Plaintiff,                  Civil Action No. 15-12585
                                   Honorable Linda V. Parker
v.                             Magistrate Judge Elizabeth A. Stafford

MICHELLE WILLIAMS-
WARD, et al.,

      Defendants.

_____/

**REPORT AND RECOMMENDATION TO GRANT
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [R. 35],
DENY PLAINTIFF'S MOTION TO AMEND [R. 50], AND
DISMISS THIS ACTION WITHOUT PREJUDICE
<u>FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES</u>**

## I.   INTRODUCTION

Plaintiff Anthony Threatt, a Michigan Department of Corrections

("MDOC") prisoner proceeding *pro se*, brings this action pursuant to 42

U.S.C. § 1983, alleging multiple violations of his constitutional rights by

various Macomb Correctional Facility ("MRF") officials.[1]  [R. 1].  Defendants

Assistant Residential Unit Supervisor ("ARUS") Michelle Williams-Ward,

Wafaa Hanna, Robert Artman, Brandon Spezia, Marsharie Stubbs,

Christopher Schwandt, James Odom, Max Abelman, M.D., Susan George,

_____

[1] The Honorable Linda V. Parker referred this action to the undersigned to
resolve all pretrial matters pursuant to 28 U.S.C. § 636(b).  [R. 31].

M.D., Residential Unit Supervisor ("RUM") Regina Jenkins-Grant, Kirkwood Coleman, Caroline Rivard-Babisch, and William Bridges ("defendants")[2] move for summary judgment, arguing that Threatt did not properly exhaust his administrative remedies.  [R. 35].  The Court agrees, and therefore **RECOMMENDS** that defendants' motion for summary judgment [R. 35] be **GRANTED** and this action be **DISMISSED WITHOUT PREJUDICE**.

## II.    BACKGROUND

Threatt's claims arise out of a slew of incidents that took place between March and July 2015, while he was housed at MRF.  [R. 1, PgID 7].  Threatt alleges that Hanna, a nurse at MRF, along with several other nurses at the facility, began retaliating against him after he filed a grievance against her on March 14, 2015 for denying him access to medication.  [*Id.*, PgID 7-8, 10-11, 26-27].  Threatt also alleges that Hanna and other MRF nurses acted with deliberate indifference to his health by providing him incorrect treatment for his diabetes.  [*Id.*, PgID 7-8, 10-11].

Threatt alleges that he was retaliated against on several other occasions by doctors, officers, and other MRF personnel.  Beyond alleging that he was the target of a "retaliation plot" carried out by ARUS Williams-Ward and Officers Spezia, Odom and Artman, Threatt contends that

---

[2] Threatt named four other defendants in the complaint, Dr. Tumada, Dr. K.R. Farris, Dr. John Doe and Nurse Nickle, who have not appeared.

Officers Odom and Schwandt retaliated against him, and denied him medical care, by refusing him access to items on his medical detail order. [R. 1, PgID 9-10, 13, 17]. He also alleges that Odom retaliated by closing him in his cell door. [*Id.*, PgID 14].

In addition, Threatt asserts that Dr. George and Dr. Abelman acted with deliberate indifference to his health by attempting to put him on medication that would have him "drugged out." [*Id.*, PgID 17-20]. He claims this was in retaliation for his efforts to report MRF staff for "bringing in drugs and weed" and "abusing mentally ill prisoners." [*Id.*].

Threatt further alleges that from March through June 2015, ARUS Williams-Ward retaliated against him by refusing to notarize his documents, acting with deliberate indifference to his health by placing "gangbangers" and "unclean people" in his cell, and denying him access to the courts by refusing to send out his legal mail. [R. 1, PgID 21-22]. He accuses RUM Jenkins-Grant of retaliation, claiming that she erroneously rejected several of his grievances against Williams-Ward and instructed MRF personnel to deny him notary services. [*Id.*, PgID 21]. On separate occasions in July 2015, Threatt alleges that Officer Coleman and Hearing Investigator Bridges threatened him. [*Id.*, PgID 14, 22].

Threatt also claims that because he required multiple doctors'

3

appointments for the same, persistent medical conditions, he had "problems that [went] untreated," such that he was denied access to medical care and erroneously charged co-pays for appointments. [R. 1, PgID 15]. He further alleges that the eye doctor at MRF, who he identifies as Dr. John Doe, denied him adequate medical care because he received no eye examinations between April and July 2015. [*Id.*, PgID 23].

Finally, Threatt claims that he was exposed to cruel and unusual punishment at the hands of several MRF doctors and officers when they acted with deliberate indifference to his health and safety. He says Dr. Tumada and Dr. Farris were deliberately indifferent to his medical needs by giving him incorrect medication for his diabetes and high blood pressure, failing to prescribe him pain medication, and refusing to provide him with adequate gym shoes and a walking cane. [R. 1, PgID 10, 12-13, 15]. Additionally, Threatt alleges that Dr. Abelman failed to protect him by refusing to remove him from segregation and ignoring his claims that officers were harassing him. [*Id.*, PgID 16-20]. He also claims that on July 8, 2015, Officers Artman, Spezia, Stubbs, and Schwandt failed to protect him and acted with deliberate indifference to his health by ignoring his emergency call, and calls of other prisoners, when his blood sugar was allegedly dropping to an unsafe level. [*Id.*, PgID 8-10].

4

III.   **ANALYSIS**

**A.**

Defendants argue for summary judgment based on Threatt's failure to exhaust his administrative remedies.  [R. 35].  Summary judgment should be granted if defendants show that there is no genuine dispute as to any material fact and they are entitled to judgment as a matter of law.  Federal Rule of Civil Procedure 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-57 (1986); *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011).  A fact is material if it could affect the outcome of the case based on the governing substantive law.  *Anderson*, 477 U.S. at 248.  In deciding a summary judgment motion, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

Although a "summary judgment motion is especially well suited to pretrial adjudication of an exhaustion defense, because proof of lack of exhaustion generally requires resort to matters outside the pleadings," *Anderson v. Jutzy,* ___ F. Supp. 3d ___, No. 15-11727, 2016 WL 1211747, at *3 (E.D. Mich. Mar. 29, 2016), granting summary judgment due to failure

5

to exhaust administrative remedies is not on the merits, and requires

dismissal without prejudice. *Adams v. Smith*, 166 Fed. Appx. 201, 204 (6th

Cir. 2006).

## B.

The Prison Litigation Reform Act ("PLRA") requires prisoners to

"properly" exhaust all "available" administrative remedies prior to filing a

lawsuit challenging prison conditions. 42 U.S.C. § 1997e(a); *Woodford v.*

*Ngo*, 548 U.S. 81, 88-90, 93 (2006). Requiring exhaustion allows prison

officials an opportunity to resolve disputes concerning the exercise of their

responsibilities before being haled into court and produces a useful

administrative record. *Jones v. Bock*, 549 U.S. 199, 204 (2007).

Proper exhaustion of administrative remedies "means using all steps

that the agency holds out, and doing so *properly* (so that the agency

addresses the issues on the merits)." *Woodford*, 548 U.S. at 90, 93

(citation omitted) (emphasis in original). The PLRA does not detail what

"proper exhaustion" entails because "it is the prison's requirements, and not

the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549

U.S. at 218. "The level of detail necessary in a grievance to comply with

the grievance procedures will vary from system to system and claim to

claim," but it is self-evident that an untimely or otherwise improperly filed

6

grievance does not fulfill the exhaustion requirement. *Id.*; *see also Woodford,* 548 U.S. at 97. Finding otherwise "would permit a prisoner to bypass deliberately and flagrantly administrative review without any risk of sanction." *Woodford,* 548 U.S. at 97.

Relevant here, MDOC Policy Directive 03.02.130 sets forth a three-step procedure prisoners must follow in order to complete the administrative review process and properly exhaust grievances. A prisoner must attempt to informally resolve the problem with the allegedly offending staff, and then may file a Step I grievance regarding any unresolved issues. MDOC Policy Directive 03.02.130, ¶ P and R (effective July 9, 2007).[3] The prisoner may then file a Step II grievance appeal within ten days of receiving the Step I response or, if no response was received, within ten business days after the date the response was due. *Id.* at ¶ BB. The same schedule applies to a Step III appeal – it is due within ten business days of receiving the Step II response or, if no response was received, within ten business days after the date the response was due. *Id.* at ¶ FF. Prison officials have 120 calendar days from the date a Step I grievance is filed, plus any applicable extensions, to provide a Step III response to a grievant. *Id.* at ¶ S. Prisoners must appeal their grievances through Step III and wait

---

[3] The Policy Directive is available at:
https://www.michigan.gov/documents/corrections/03_02_130_200872_7.pdf

until receipt of a Step III response, or until the response is past due, before filing suit.

## C.

Defendants argue that Threatt failed to file grievances for some of his claims, and that the grievances he did file were not appealed through the entire administrative review process prior to filing suit.  [R. 35, PgID 312]. The Court agrees.

### i.  Grievances Threatt Filed After Filing the Lawsuit and Grievances Not Related to Claims in the Complaint

Before addressing the claims and grievances that are relevant to the exhaustion analysis, the Court notes that eight of the grievances Threatt relies on are irrelevant to the question of exhaustion.  In both the complaint and his response to the motion for summary judgment, Threatt provides evidence of twenty-seven grievances filed both within and outside the timeline alleged in the complaint.  [*See* R. 1; R. 1-1; R. 1-2; R. 36; R. 36-1]. Of those, six were filed after Threatt filed the current lawsuit, [R. 36, PgID 448; R. 36-1, PgID 466, 468, 470, 474, 478], and are therefore immaterial to the current analysis.  *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999) (holding that prisoners "may not exhaust administrative remedies during the pendency of [a] federal suit" because it "ignores the clear mandate of § 1997e(a) which requires exhaustion … *prior* to filing suit")

8

(citation omitted and emphasis in original).  Additionally, two grievances filed between March and July 2015 are irrelevant to any claims alleged in the complaint.  [R. 36-1, PgID 454, 493].  These eight grievances will therefore not be further addressed.

### ii.  Claims in the Complaint that Threatt Never Grieved

Of the nineteen remaining grievances, none relate to Threatt's claim that doctors Tumada and Farris acted with deliberate indifference to his health.  Additionally, there is no evidence that Threatt filed any grievances related to his claims that Officer Coleman threatened him or that the MRF eye doctor denied him medical care.  These claims should be dismissed.

Threatt filed grievances relating to the remaining assertions in the complaint, but he did not exhaust any of them through Step III of the grievance process prior to filing suit on July 20, 2015.

### iii.  Grievances that Threatt Only Filed Through Steps I or II

Grievances MRF 15-05-00862-028E, MRF 15-04-00721-001G, and MRF 15-05-00925-001G relate to Threatt's claims that he should not have to pay co-pays for multiple doctor's appointments concerning the same medical conditions.  [R. 1, PgID 41, 46, 48].  After receiving Step I responses to these grievances on May 12, June 5, and June 5, 2015, respectively, [*id.*], there is no evidence that he exhausted them by

appealing to the next step of the process.

Threatt filed a slew of grievances related to his claims that ARUS Williams-Ward retaliated against him, barred him from accessing the courts, and acted with deliberate indifference to his health. Threatt received Step I responses to grievance MRF 15-05-00889-015B on May 20, and grievances MRF 15-06-01151-028A and MRF 15-06-01152-028A on June 26, 2015. [R. 1-1, PgID 93; R. 1-2, PgID 110, 112]. There is no evidence that he appealed these responses to Step II.

In addition, Threatt filed two other grievances against Williams-Ward, including MRF 15-06-01150-017B on June 22, 2015, and MRF 15-07-01303-015B on July 11, 2015. [R. 36, PgID 432, 440]. But he filed suit prior to receiving Step I responses to these grievances on August 3, 2015. [*Id.*].

Threatt filed grievances MRF 15-06-01154-028A and MRF 15-07-01343-028B against RUM Jenkins-Grant for retaliation. [R. 1-2, PgID 108; R. 36, PgID 444]. He received a Step I response to grievance 028A on June 26, 2015, but provided no evidence that he filed a Step II appeal. [R. 1-2, PgID 108]. Threatt filed grievance 028B on July 19, 2015, only one day before filing suit and, therefore, did not allow MRF personnel adequate time to respond prior to filing suit. [R. 36, PgID 444].

10

Similarly, Threatt filed grievance MRF 15-07-01248-017Z on July 6, 2015, against Officer Odom for retaliation and denial of medical care, [*id.*, PgID 436]; grievance MRF 15-07-01368-017A on July 17, 2015, against Hearing Investigator Bridges for allegedly threatening him, [R. 36-1, PgID 487]; grievance MRF 15-07-01317-012B on July 14, 2015, against Dr. George and Dr. Abelman for retaliation and deliberate indifference, [*id.*, PgID 472]; grievance MRF 15-07-01283-028I on July 8, 2015, against Officers Artman, Spezia, Stubbs, and Schwandt for failure to protect, [*id*, PgID 456]; and grievance MRF 15-07-01311-012B on July 13, 2015, against Dr. Abelman for deliberate indifference and failure to protect, [*id.*, PgID 476].  He filed all of these grievances in the two weeks prior to filing the complaint in this action, providing MRF officials no time to complete the grievances process.

Finally, Threatt filed two Step II grievance appeals that did not proceed to Step III.  Threatt received a Step I response to grievance MRF 15-06-01155-017Z on July 1, 2015, and filed a Step II appeal on July 6, 2015.  [R. 36-1, PgID 489, 491].  He did not receive a response to his Step II grievance appeal until January 25, 2016, well after the due date.  [*Id.*, PgID 491].  However, having not received a timely response, Threatt was required to file a Step III appeal within 10 business days after the date the

11

Step II response was due.  *See* MDOC Policy Directive 03.02.130, ¶ FF.

He failed to do this, and instead waited until after he received the late Step

II response; this was not proper exhaustion.  More importantly, Threatt did

not exhaust this grievance prior to filing his complaint.

The other Step II appeal is grievance MRF 15-06-0993-01C.  [R. 1-2,

PgID 123, 128].  Threatt provides no evidence that he appealed this

grievance beyond Step II of the grievance process and, additionally, it is

not listed in his MDOC Prisoner Step III Grievance Report.[4]  [R. 35-2].

In response to defendants' argument that no grievances were

properly appealed prior to filing suit, Threatt argues that MRF personnel

interfered with his ability to follow the grievance process by sending him

blank Step II appeal forms after the date his Step II appeals were due for

grievances MRF 15-06-01150-017B, MRF 15-07-01248-017Z, MRF 15-07-

01303-015B, and MRF 15-07-01343-028B.  [R. 36, PgID 413, 430].  This

argument lacks merit because Threatt filed suit before he even requested

the blank Step II appeal forms; whether or not MRF personnel returned the

forms on time had no impact on his failure to exhaust these grievances

---

[4] The MDOC Step III Grievance Report is a consolidated list of every Step I grievance Threatt has appealed through Step III of the MDOC Grievance Process.  [*See* R. 35-2].

12

prior to filing the July 20 complaint.[5]

Threatt further argues that he was barred from exhausting his administrative remedies because he was threatened, intimidated, and put in imminent danger by MRF personnel.  [R. 36, PgID 417].  But the PLRA requires exhaustion of all "available" administrative remedies prior to filing suit even when a prisoner alleges that he or she is in imminent danger of serious physical injury.  *Arbuckle v. Bouchard*, 92 Fed. Appx. 289, 291 (6th Cir. 2004).  And factually, although Threatt alleges he failed to exhaust his administrative remedies because Hearing Investigator Bridges threatened him, [R. 1, PgID 14], the record shows that Threatt filed a grievance related to this claim on July 8, 2015, and continued to file various other grievances after this date.[6]

Threatt further contends that he was unable to properly exhaust his administrative remedies because Officer Coleman threatened him by calling him names and Officer Odom intimidated him by staring at him and

---

[5] Threatt further argues that he was confined to a mental hospital at the time he received the above appeal forms and he should have received additional time to file Step II appeals.  [R. 36, PgID 414].  This argument is irrelevant because he filed suit before receiving Step I responses.

[6] In response to defendants' motion for summary judgment, Threatt alleges that on November 19, 2015, his cellmate hit him in the face and asked him why he was suing Officers Spezia and Artman.  [R. 36, PgID 418]. However, there is no evidence that his alleged attack is related to Bridges' alleged threats and, regardless, it occurred after Threatt filed suit.

rolling his eyes, [R. 1, PgID 22], but those actions would not prevent a person of ordinary firmness from pursuing the grievance process. *Himmelreich v. Fed. Bureau of Prisons*, 766 F.3d 576, 578 (6th Cir. 2014) (claim that prisoner did not exhaust because of threat requires proof of a threat that would deter a person of ordinary firmness). In *Himmelreich*, the plaintiff alleged that a prison official threatened to transfer him and have him physically attacked if he grieved. *Id.* at 577. Name-calling and eye-rolling are not comparable to the *Himmelreich* allegations.

Because Threatt failed to properly exhaust his available administrative remedies for the above grievances, the related claims should be dismissed. *Jones*, 549 U.S. at 218; *Woodford*, 548 U.S. at 88.

### iv. Grievances that Threatt Filed Through Step III

Prior to filing suit, Threatt only filed Step III appeals for two grievances: MRF 15-03-00514-12E4 ("12E4") and MRF 15-04-00782-012B ("012B"). However, defendants correctly point out that as of July 20, 2015, the date Threatt filed suit, MRF officials had not returned Step III responses for either of these grievances, and the due date for their responses had not yet passed.

Moreover, Grievance 12E4 is irrelevant because it alleges an unrelated denial of medical care claim that took place prior to the events

14

alleged in the complaint.  [R. 1, PgID 26].  However, even if Threatt alleged a claim based on the assertions in grievance 12E4, the claim should still be dismissed because Threatt did not properly exhaust his administrative remedies for this grievance.  Threatt filed grievance 12E4 on March 14, 2015.  [R. 1, PgID 26].  Based upon the 120-day time limit in MDOC Policy Directive 03.02.130 ¶ S, the Step III response would have been due July 12, 2015, but an extension was approved for this grievance at Step I, giving MRF staff until at least July 31, 2015 to provide Threatt with a Step III response.  [R. 1, PgID 27].  Because Threatt filed this suit before receiving a Step III response to this grievance, and before the Step III response was due, he failed to properly exhaust his administrative remedies.

Threatt filed grievance 012B on April 28, 2015.  [R. 1-1, PgID 53].  At the time he filed suit, Threatt had not received a Step III response for this grievance, and the 120-day deadline for the response was not due until August 26, 2015, after he filed suit.  Therefore, Threatt failed to properly exhaust his administrative remedies prior to filing suit, and the claims related to this grievance should be dismissed.

Threatt contends that MRF officials interfered with his efforts to exhaust the above Step III grievances, pointing out that the grievance identifier numbers for grievances 12E4 and 012B vary between documents

in the record, and arguing that the grievance coordinator changed them in order to thwart his attempts to properly complete the grievance process. [R. 36, PgID 412].  But there is no evidence that the minute differences in grievance identifier numbers between the grievance forms had any impact on Threatt's ability to complete the grievance process.  Although the grievance identifier number for 12E4 varies by one digit from documents at Step I to Step III, [*compare* R. 1, PgID 26, *with* R. 35-2, PgID 318], and the grievance identifier number for 012B varies by two digits from documents at Step I to Step III, [*compare* R. 1-1, PgID 53, *with* R. 35-2, PgID 318], Threatt was still able to timely appeal both grievances through Step III of the grievance process.  [R. 35-2, PgID 318].

Because Threatt failed to properly exhaust his administrative remedies prior to filing suit, the claims related to these grievances should be dismissed.  *See Freeman*, 196 F.3d at 645.

### v. *Sua Sponte* Dismissal of Remaining Defendants

Under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, the Court has an obligation to dismiss complaints *sua sponte* when they fail to state a claim, are frivolous, or seek monetary relief from immune defendants.  *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997).  Threatt's claims against defendants who have not appeared – Dr. Tumada, Dr.

16

Farris, Dr. John Doe, and Nurse Nickle – are the same as his claims against defendants who have appeared, and they arise from the same grievances.  Thus, for the same reasons explained above, Threatt failed to exhaust his administrative remedies for his claims against defendants who have not appeared, such that they should be *sua sponte* dismissed pursuant to §§ 1915(e)(2)(B) and 1915A.

## IV.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that defendants' motion for summary judgment [R. 35] be **GRANTED**, and that this case be **DISMISSED WITHOUT PREJUDICE**.  Furthermore, because the Court is recommending dismissal of this action, Threatt's motion to amend [R. 50][7] should be **DENIED** as **MOOT**.

s/Elizabeth A. Stafford

---

[7] In Threatt's motion to amend he seeks to join case number 14-14129, which he filed on October 17, 2014, against ten defendants, none of whom are being sued in the present complaint. [*See Threatt v. Shields*, E.D. Mich. Case No. 14-14129, R. 1].  The Honorable Bernard A. Friedman dismissed the case without prejudice on November 4, 2014, upon finding that Threatt failed to allege facts showing that he was in danger of imminent physical injury at the time he filed suit.  [*Id.*, R. 3, PgID 5].  A showing of imminent danger at the time of filing is an exception to the three strikes provision of 28 U.S.C. § 1915(g), which prevents a prisoner from filing suit *in forma pauperis* after three of his cases have previously been dismissed for being frivolous, malicious, or for failing to state a claim.  Even if Threatt survived summary judgement, the Court should not allow him to join various unrelated claims because, among other reasons, it would create an avenue for prisoners to circumvent the three strikes provision.

17

ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: July 13, 2016

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this

Report and Recommendation, but must act within fourteen days of service

of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ.

P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any

further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v.

Sec'y of HHS*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638

F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail

to raise others with specificity will not preserve all objections that party

might have to this Report and Recommendation.  *Willis v. Sec'y of HHS*,

931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local

231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be

served upon this Magistrate Judge.  E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2,"

etc., and **must specify** precisely the provision of this Report and

Recommendation to which it pertains.  Not later than fourteen days after

service of objections, **the non-objecting party must file a response** to

the objections, specifically addressing each issue raised in the objections in

18

the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 13, 2016.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager